UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,  )
                                     )
            Plaintiff,               )
                                     )
v.                                   )
                                     )
FREDERIC ELM f/k/a FREDERIC ELMALEH,  )
ELM TREE INVESTMENT ADVISORS LLC,    )
ELM TREE INVESTMENT FUND LP,         )
ELM TREE 'E'CONOMY FUND LP, and      )
ELM TREE MOTION OPPORTUNITY LP,      )
                                     )
            Defendants,              )
and                                  )
                                     )
AMANDA ELM f/k/a AMANDA ELMALEH,     )
                                     )
            Relief Defendant.        )
_____)

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges as follows:

**I.   INTRODUCTION**

1.   The Commission brings this action to enjoin (i) Defendant Frederic Elm f/k/a Frederic Elmaleh ("Elm"); (ii) the unregistered investment adviser that Elm operates — Defendant Elm Tree Investment Advisors LLC ("ETIA"); and (iii) three funds for which ETIA purportedly acts as the fund manager — Defendants Elm Tree Investment Fund LP ("Investment Fund"), Elm Tree 'e'Conomy Fund LP ("'e'Conomy Fund"), and Elm Tree Motion Opportunity LP ("Motion Opportunity Fund") (together, the "Elm Tree Funds"), from violating the antifraud and registration provisions of the federal securities laws. From no later than November 2013 to the

present, Defendants have raised at least $17 million from more than 50 investors through the ongoing sale of securities in the Elm Tree Funds.

2. In connection with the offer, purchase and sale of these securities, Defendants made material misstatements and omissions to investors about, among other things, how investor funds would be used and the amount of fees investors would be charged. The offering documents provided that Elm and ETIA would charge a 2% annual management fee, but would not receive any additional payments unless and until the Elm Tree Funds made a profit. Elm and ETIA invested only a portion of the investor funds raised. They traded securities with those funds and lost most of the money through that trading. At no point, however, did they earn a profit that would have entitled them to additional compensation under the offering documents. Instead, Elm and ETIA used the majority of the funds raised to pay back investors with Ponzi-like payments and for Elm's own personal use. Indeed, to date, Elm has misappropriated at least $2 million in investor funds to pay for a $1.75 million home, high-end home furnishings and other personal items such as automobiles, jewelry, and daily living expenses. These sums far exceed the 2% management fee Elm and ETIA told investors they would charge.

3. ETIA also provided vastly inflated valuation statements to investors. At least one such statement showed the 'e'Conomy Fund alone having a value of over $125 million as of the end of November 2014. This valuation was false because the Elm Tree Funds did not earn a profit during the relevant time period and because records show the brokerage account in which Elm traded had only approximately $3.2 million as of the end of November 2014.

4. Additionally, Defendants engaged in fraud involving improper payments to Elm's wife, Relief Defendant Amanda Elm f/k/a Amanda Elmaleh ("Amanda Elm"). Bank records

indicate that over $100,000 in investor funds was transferred to Amanda Elm and that nearly $20,000 of her student loans were paid from investor funds.

5. To date, Elm and ETIA continue to operate a Ponzi scheme, soliciting new investors in the Elm Tree Funds and using new investors' funds to make payments to earlier investors. In addition, Elm recently lost more money trading in the funds' accounts and continues to misappropriate significant amounts of investor money, including payments for home furnishings and jewelry.

6. As a result of the conduct alleged in this Complaint, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77q(a); Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; and Elm and ETIA also violated Sections 206(1), 206(2), and 206(4) and Rules 206(4)-8(a)(1) and 206(4)-8(a)(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4), and 17 C.F.R. §§ 275.206(4)-8(a)(1) and (a)(2). Unless restrained and enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

7. The Commission therefore respectfully requests the Court enter: (i) a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining Defendants from violating the federal securities laws; (ii) an order freezing the assets of Defendants and Relief Defendant, until further order of the Court; (iii) an order directing Defendants and Relief Defendant to provide a sworn accounting of all proceeds received; (iv) an Order appointing a receiver over ETIA and the Elm Tree Funds; (v) an Order requiring Defendants and Relief Defendant to preserve documents; (vi) an Order expediting discovery;

(vii) an order directing Defendants and Relief Defendant to pay disgorgement with prejudgment interest; and (viii) an order directing Defendants to pay civil money penalties.

## II. DEFENDANTS AND RELIEF DEFENDANT

### A. Defendants

8. Elm, age 45, is a resident of this District. During the relevant time period, he was the founder and managing director of ETIA and the general partner and fund manager of the Elm Tree Funds.

9. ETIA is a Florida limited liability company with its principal place of business located in this District. During the relevant time period, ETIA was the fund manager of the Elm Tree Funds.

10. The Investment Fund is a Delaware limited partnership formed in July 2013 with its principal place of business located in this District.

11. The 'e'Conomy Fund is a Delaware limited partnership formed in October 2013 with its principal place of business located in this District.

12. The Motion Opportunity Fund is a Delaware limited partnership formed in May 2014 with its principal place of business located in this District.

### B. Relief Defendant

13. Amanda Elm, age 28, is a resident of this District. During the relevant time period, she was married to Elm.

## III. JURISDICTION AND VENUE

14. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); Sections 21(d) and 27 of the

Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa; and Sections 209 and 214 of the Advisers Act, 15 U.S.C. §§ 80b-9 and 80b-14.

15. The Court has personal jurisdiction over Defendants and Relief Defendant, and venue is proper in this District, because, among other things, Defendants offered or sold securities to investors in this District, and because Defendants and Relief Defendant reside and/or have their principal place of business in this District.

16. In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## IV. DEFENDANTS' FRAUDULENT INVESTMENT SCHEME

### A. Background

17. From no later than November 2013 to the present, Defendants have raised at least $17 million from more than 50 investors through the sale of securities in the Elm Tree Funds. Elm and ETIA were engaged in the business of directly advising the funds as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.

18. Elm encouraged investors to invest in the Elm Tree Funds in person and during conversations he had with them on the telephone and through email. Investors made their investments in at least two different ways. Most purchased limited partnership interests pursuant to a subscription agreement which referenced a private placement memorandum describing each fund's investment program. Investors returned the signed agreements to Elm by mail or by email. The private placement memoranda represented the money was being invested in, among other things, "equity stock and option strategies," and "privately-held, high-growth, emerging

Internet and mobile companies," and further provided that Elm and ETIA would take a 2% annual management fee plus 20% of any profits the Elm Tree Funds earned.

19.     The remaining investors invested in the 'e'Conomy Fund through promissory notes. The notes provided the principal investment plus interest would be repaid on a maturity date that varied from one to five years. The notes did not provide interest rates, but rather set dollar amounts to be repaid, which equated to approximate annual returns ranging from 2% to 11%. The notes also provided the purpose of the loan was "for the development and eventual commercial release of various internet properties." Investors returned the signed promissory notes to Elm by mail or by email.

20.     Investors sent their investment funds to Elm by wire transfer or by mailing a check. Elm initially deposited the funds into bank accounts held by ETIA and the Elm Tree Funds. He then transferred the money back and forth between the various accounts and comingled money invested in a specific Elm Tree Fund with money invested in other Elm Tree Funds. Elm also commingled the money raised through the promissory notes with the money raised through the subscription agreements. Elm and ETIA did not segregate the funds in the account belonging to the specific Elm Tree Fund in which investors invested.

21.     Elm invested a portion of the money raised. He sent approximately $7.1 million in net transfers to a TD Ameritrade account in the name of the Investment Fund that he used for trading in all of the Elm Tree Funds. At no point during the relevant time period, however, did investments in any of the funds return a profit. Instead, from January 2014 to the end of November 2014, the TD Ameritrade account lost approximately $3.9 million in stock trading. To date, Elm has withdrawn at least $5.2 million of investor funds from the account to make

payments to investors. Since the Elm Tree Funds did not return a profit, these repayments were simply the return of investor principal in Ponzi-like fashion.

### B.     Misstatements and Omissions and Fraudulent Use of Investor Funds

#### (1)     Use of Funds

22.     Elm signed the subscription agreements on behalf of the Elm Tree Funds. The agreements reference the private placement memoranda, which describe the investments as follows:

> a.   The Partnership's primary objective is to utilize equity stock and option strategies to safely and effectively maximize returns superior to comparative investment vehicles. [Investment Fund]
>
> b.   The Fund's investment objective is to maximize the total return on invested capital by seeking capital gains on equity and equity-related investments in privately-held, high-growth, emerging Internet and mobile companies that are characterized by new, innovative and disruptive technologies. ['e'Conomy Fund and Motion Opportunity Fund]

23.     Similarly, the promissory notes provided that the purpose of the loan was "for the development and eventual commercial release of various internet properties." Elm signed the notes on behalf of the 'e'Conomy Fund.

24.     These and other similar statements in the private placement memoranda and promissory notes were false and misleading. While Elm invested a portion of investor funds, he used the vast majority of the funds to repay other investors in Ponzi-like fashion and to fund his own personal expenses and the expenses of his wife, Amanda Elm, as described below. As the managing director of ETIA and the manager of the Elm Tree Funds, Elm knew all of the investor funds were not being invested or used as described in the private placement memoranda and the promissory notes, that the investments he made on behalf of the Elm Tree Funds were not returning a profit, that he was commingling investor funds across the various Elm Tree Fund

accounts, that he was repaying some investors with other investors' funds, and that he was misappropriating investor funds for his own personal use.

### (2) Management Fees and Misappropriation of Investor Funds

25. The private placement memoranda provided that Elm and ETIA would charge a 2% annual management fee and receive 20% of any profits the Elm Tree Funds made:

   a. Investors in the Partnership will generally be subject to (i) a quarterly management fee, payable in arrears equal to 3/12 of 2.0% of such investor's capital account balance as of the end of such fiscal quarter (a 2% annual rate); and (ii) a quarterly performance allocation equal to 20% of each investor's ratable share of the Partnership's profits for such fiscal quarter, but only to the extent that such profits exceed such investor's "high water mark." [Investment Fund]

   b. 2% of contributed capital per annum, paid quarterly in advance ("Management Fee"). 100% to Fund Investors (pro rata); after a Fund Investor has received distributions equal to his capital contribution, 80% to such Fund Investor and 20% to Fund Manager ("Carried Interest"). Payable only after minimum rate of return (10%) is achieved. ['e'Conomy Fund and Motion Opportunity Fund]

26. Contrary to these representations, Elm and ETIA took significantly more than a 2% management fee. Based upon the amount of investor proceeds invested in the Elm Tree Funds, the stated management fee would have been between approximately $184,000-$381,000. In addition, because the Elm Tree Funds did not make any profits during the relevant time period, Elm and ETIA were not entitled to any profit sharing, and thus would only have earned the management fee.

27. Elm, however, withdrew and misappropriated at least $2 million for his own personal benefit and for the benefit of his wife, Amanda Elm. Bank records reflect that Elm and ETIA did not take fees on a quarterly basis — contrary to the representations in the private placement memoranda — but rather Elm used the Elm Tree Funds as his own personal piggy

bank, paying everyday expenses such as utility bills, gas, lawn care, pet and baby items and medical bills from fund accounts. Some of the larger misappropriations include $732,000 from ETIA and Investment Fund accounts to pay for a $1.75 million personal residence for Elm and Amanda Elm; almost $300,000 paid from ETIA and Investment Fund accounts to car dealerships for luxury cars in the name of Elm and Amanda Elm; over $130,000 paid from ETIA and Investment Fund Accounts for jewelry; and $55,000 paid from ETIA to a local religious organization. Elm also funneled a significant amount of investor funds to Amanda Elm, including almost $20,000 paid from an ETIA account for her student loans and over $100,000 transferred from the 'e'Conomy Fund and ETIA accounts.

28.   As the managing director of ETIA and the manager of the Elm Tree Funds, Elm knew he and ETIA were taking significantly more than a 2% management fee in paying these exorbitant amounts and that the Elm Tree Funds were not returning a profit, making Elm and ETIA ineligible for the 20% profit entitlement under the fund offering documents.

### (3) Fund Valuation

29.   Elm and ETIA also provided false valuation statements to investors. For example, one statement for the period ended November 28, 2014 valued the 'e'Conomy Fund at over $125 million. In reality, however, neither the 'e'Conomy Fund nor any of the Elm Tree Funds earned a profit during the relevant time period, and thus could not have been valued anywhere near what the valuation statement reported. Rather, the funds lost approximately $3.9 million in trading, and Elm returned additional money to other investors or misappropriated it himself. In addition, records show the TD Ameritrade brokerage account in which Elm traded had only approximately $3.2 million as of the end of November 2014. As the managing director

of ETIA and the manager of the Elm Tree Funds, Elm knew the Elm Tree Funds were not returning a profit and were not valued anywhere near $125 million.

### C. Ongoing Operations

30. Elm and ETIA continue to operate a Ponzi scheme, soliciting new investors in the Elm Tree Funds and using new investors' funds to make payments to earlier investors. Elm has moved the ETIA website to a different internet domain and has begun to use a new email address in corresponding with investors. Elm also has launched a new investment fund called ETOPIA, LP, and continues to raise money for this new fund.

31. Elm also continues to dissipate investor proceeds in the Elm Tree Funds. He recently wrote a cashier's check for almost $30,000 in high-end furniture. He also continues to trade heavily in the TD Ameritrade brokerage account, and recently lost over $300,000.

32. Based on the misrepresentations and omissions to investors in the Elm Tree Funds and the misappropriation of millions of dollars in investor assets, emergency relief is needed to preserve the funds presently in the Defendants' accounts. Indeed, unless restrained and enjoined, Defendants are reasonably likely to continue to violate the federal securities laws through their ongoing operations.

## COUNT I

### Fraud in Violation of Section 17(a)(1) of the Securities Act

#### (Against All Defendants)

33. The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

34. From no later than November 2013 to the present, Defendants directly and indirectly, by use of the means or instruments of transportation or communication in interstate

commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

35.     By reason of the foregoing, Defendants directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT II

### Fraud in Violation of Section 17(a)(2) of the Securities Act

**(Against All Defendants)**

36.     The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

37.     From no later than November 2013 to the present, Defendants directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

38.     By reason of the foregoing, Defendants directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## COUNT III

### Fraud in Violation of Section 17(a)(3) of the Securities Act

**(Against All Defendants)**

39.     The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

40. From no later than November 2013 to the present, Defendants directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, engaged in transactions, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers and prospective purchasers of such securities.

41. By reason of the foregoing, Defendants directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT IV

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

### (Against All Defendants)

42. The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

43. From no later than November 2013 to the present, Defendants directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, in connection with the purchase or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

44. By reason of the foregoing, Defendants directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(a) of the Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5(a).

## COUNT V

### Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act

### (Against All Defendants)

45. The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

46. From no later than November 2013 to the present, Defendants directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, in connection with the purchase or sale of securities, as described in this Complaint, knowingly, willfully or recklessly made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

47. By reason of the foregoing, Defendants directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(b) of the Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5(b).

## COUNT VI

### Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act

### (Against All Defendants)

48. The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

49. From no later than November 2013 to the present, Defendants directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, in connection with the purchase or sale of securities, as described in this Complaint, knowingly, willfully or recklessly engaged in acts, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers and prospective purchasers of such securities.

50. By reason of the foregoing, Defendants directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(c) of the Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5(c).

## COUNT VII

### Fraud in Violation of Section 206(1) of the Advisers Act

### (Against Elm and ETIA)

51. The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

52. From no later than November 2013 to the present, Elm and ETIA were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

53. By engaging in the conduct described in this Complaint, Elm and ETIA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly employed a device, scheme, or artifice to defraud the Elm Tree Funds.

54. By reason of the foregoing, Elm and ETIA directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

## COUNT VIII

### Fraud in Violation of Section 206(2) of the Advisers Act

### (Against Elm and ETIA)

55. The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

56. From no later than November 2013 to the present, Elm and ETIA were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

57. By engaging in the conduct described in this Complaint, Elm and ETIA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly engaged

in transactions, practices, or courses of business which operated as a fraud or deceit upon the Elm Tree Funds.

58.  By reason of the foregoing, Elm and ETIA directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 206(2) of the Advisers Act, 15 U.S.C. § 80b-6(2).

## COUNT IX

### Fraud in Violation of Section 206(4) and Rule 206(4)-8(a)(1) of the Advisers Act

### (Against Elm and ETIA)

59.  The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

60.  From no later than November 2013 to the present, Elm and ETIA were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

61.  From no later than November 2013 to the present, the Elm Tree Funds were "pooled investment vehicles" within the meaning of Rule 206(4)-8(b) of the Advisers Act.

62.  By engaging in the conduct described in this Complaint, Elm and ETIA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors in the Elm Tree Funds.

63.  By reason of the foregoing, Elm and ETIA directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 206(4) and Rule 206(4)-8(a)(1) of the Advisers Act, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(1).

## COUNT X

### Fraud in Violation of Section 206(4) and Rule 206(4)-8(a)(2) of the Advisers Act

### (Against Elm and ETIA)

64. The Commission repeats and realleges Paragraphs 1 through 32 of its Complaint.

65. From no later than November 2013 to the present, Elm and ETIA were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11).

66. From no later than November 2013 to the present, the Elm Tree Funds were "pooled investment vehicles" within the meaning of Rule 206(4)-8(b) of the Advisers Act.

67. By engaging in the conduct described in this Complaint, Elm and ETIA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly engaged in acts, practices, or course of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the Elm Tree Funds.

68. By reason of the foregoing, Elm and ETIA directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 206(4) and Rule 206(4)-8(a)(2) of the Advisers Act, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(2).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that Defendants committed the violations of the federal securities laws alleged herein.

II.

**Temporary Restraining Order, Preliminary Injunction and Permanent Injunction**

Issue a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction, restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating the federal securities laws alleged in this Complaint.

III.

**Asset Freeze**

Issue an Order freezing the assets of Defendants and Relief Defendant, until further Order of the Court.

IV.

**Sworn Accounting**

Issue an Order directing Defendants and Relief Defendant to provide a sworn accounting of all proceeds received resulting from the acts or courses of conduct alleged in this Complaint.

V.

**Appointment of a Receiver**

Issue an Order appointing a receiver over ETIA and the Elm Tree Funds.

VI.

**Records Preservation**

Issue an Order restraining and enjoining Defendants and Relief Defendant, their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, from, directly or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering

illegible in any manner, any of the books, records, documents, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property of or pertaining to Defendants and Relief Defendant wherever located and in whatever form, electronic or otherwise, that refer, reflect or relate to the acts or courses of conduct alleged in this Complaint, until further Order of this Court.

## VII.

### Expedited Discovery

Issue an Order expediting discovery for the Commission to take in the period between issuance of a temporary restraining order and preliminary injunction.

## VIII.

### Disgorgement

Issue an Order directing Defendants and Relief Defendant to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## IX.

### Penalties

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d); and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e).

## X.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## XI.

## Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated: January 15, 2015          Respectfully submitted,


By:   /s/ Patrick R. Costello
      Patrick R. Costello
      Senior Trial Counsel
      Florida Bar No. 75034
      Direct Dial: (305) 982-6380
      E-mail: CostelloP@sec.gov
      *Lead Attorney*
      *Attorney To Be Noticed*

      Katharine Zoladz
      Senior Counsel
      S.D. Fla. No. A5502058
      Direct Dial: (305) 416-6220
      Email: ZoladzK@sec.gov


      **ATTORNEYS FOR PLAINTIFF**
      **SECURITIES AND EXCHANGE COMMISSION**
      801 Brickell Avenue, Suite 1800
      Miami, Florida 33131
      Telephone: (305) 982-6300
      Facsimile: (305) 536-4154